Hines, J.
(dissenting, with whom Duffly, J., joins). I agree with the court’s ruling that a parole officer may conduct a warrantless *492 search of a parolee’s home based on reasonable suspicion that the search will reveal evidence that the parolee has violated, or is about to violate, a condition of his or her parole. I do not agree, however, with the court’s application of that principle to this case. Even assuming the corroboration of the anonymous tip that the defendant was selling drugs in New Bedford, the totality of the information known to the police at the time of the search does not establish reasonable suspicion that evidence of the defendant’s drug dealing activities would be found in his home. For this reason, I respectfully dissent.
The test for reasonable suspicion to conduct a warrantless search of a parolee’s home is the same as that articulated in Terry v. Ohio, 392 U.S. 1 (1968), and its progeny, see Commonwealth v. Silva, 366 Mass. 402, 406 (1974). Ante at 488. It requires that the officer’s actions be based on “specific and articulable facts and the specific reasonable inferences” that the search would reveal evidence that the parolee has violated, or is about to violate, a condition of parole. Silva, supra. The court’s analysis leans heavily on the tip that the defendant violated the conditions of parole by selling illegal drags and, based in large part on that information, finds the required nexus to the defendant’s home. The analysis is flawed insofar as it is premised on an unacceptably conclusory view of the facts known to the parole officer at the time of the search. The substance of the court’s reasoning is that “[b]ased on the tip and the evidence of the defendant’s conduct consistent with that tip, and in light of [the parole officer’s] experience, both with narcotics and with other parolees, it was reasonable for him to suspect that a search of the defendant’s home would produce further evidence of drag-related parole violations, including illegal possession or distribution.” Ante at 490. The required nexus between the defendant’s criminal activity and his home demands more specificity than is supplied by the bare-bones “tip” and the “evidence of the defendant’s conduct consistent with that tip” on which the court relies. Id. At best, the information relied on by the court to find a nexus between the defendant’s illegal activity and his home established only that he was suspected of a crime and that he lived at the residence where the search was conducted. “Information establishing that a person is guilty of a crime does not necessarily constitute probable cause [or in this case reasonable suspicion] to search the person’s residence.” Commonwealth v. Pina, 453 Mass. 438, 441 (2009), quoting Commonwealth v. Cinelli, 389 Mass. 197, 213, cert. denied, 464 U.S. 860 (1983). *493 Similarly, reasonable suspicion that evidence of the defendant’s illegal drug activity would be found in the defendant’s home “is not established by the fact that the defendant lives there.” Pina, supra.
Although our cases addressing the nexus between the suspected criminal activity and the place of the search arise in the context of probable cause for the issuance of a search warrant, the analytical framework underlying those cases is instructive. In that context, the issue is whether the warrant establishes “a sufficient nexus between the defendant’s drug-selling activity and his residence to establish probable cause to search the residence.” Id., quoting Commonwealth v. O’Day, 440 Mass. 296, 304 (2003). Applying that framework to the warrantless search of a parolee’s home, the issue is the same: whether there is a sufficient nexus between the criminal activity and the defendant’s home. The test, however, is the less rigorous standard of reasonable suspicion rather than probable cause.
As we recently observed, “[n]o bright-line rule can establish whether there is a nexus between suspected drug dealing and a defendant’s home.” Commonwealth v. Escalera, 462 Mass. 636, 643 (2012). Nonetheless, our cases provide sufficient guidance to warrant the conclusion that the nexus was lacking in this case. We have found a sufficient nexus in cases involving observations by police of a suspect leaving his or her home and proceeding directly to a controlled sale on multiple occasions. See, e.g., Commonwealth v. Cruz, 430 Mass. 838, 841-842 (2000) (undercover officer purchased cocaine from defendant in parking lot of defendant’s apartment building during six separate controlled sales); Commonwealth v. Monteiro, 80 Mass. App. Ct. 171, 175 (2011) (multiple controlled purchases after defendant observed leaving his home); Commonwealth v. Hardy, 63 Mass. App. Ct. 210, 211-212 (2005) (defendant left from apartment for two controlled purchases). A nexus may also be shown where the police made a single observation of a suspect departing from his or her home for a drug deal “coupled with other information, such as statements from credible informants.” Escalera, supra at 644. Ultimately, “there need not be definite proof that the seller keeps his supply at his residence” (citation omitted). Id. at 645. Rather, it will suffice “if there are some additional facts [that] would support the inference that the supply is probably located there” (citation omitted). Id.
Accepting for the sake of argument the reliability of the anonymous tip that the defendant was selling illegal drugs in New *494 Bedford,[1] nothing in the information available to the parole officer prior to the search connected that activity to the defendant’s home. When questioned about the details of the tip at the motion to suppress hearing, the parole officer responded unequivocally that the anonymous tipster provided no information other than “he [the defendant] was dealing drugs. That’s all.” Thus, the tip contained no information from which the parole officer reasonably could infer that this particular illegal activity was occurring at the defendant’s home.
The other available information concerning the defendant’s movements, on which the court relies, adds nothing to the picture of how the defendant conducted his business and, more specifically, whether the defendant’s home was used in the operation of the enterprise. The parole officer was aware that the defendant had made two trips to Boston, staying for only a brief time and then returning to New Bedford. On the days following the return from Boston, the defendant moved about New Bedford, suggesting that he might have been selling illegal drugs. Without more information, however, it is simply not possible to draw any inferences regarding the location of the defendant’s supply or the place where the sales occurred. That the defendant was in the company of a person who had drugs on her person and that the defendant was found in possession of a “blunt” when he was stopped by the police, of course, is evidence of a parole violation. It is not suggested, however, that any such violation was the predicate for the search of the defendant’s home. Unquestionably, the search was related to the drug activity and it must be validated on that basis alone.
I recognize that the “facts and inferences underlying the officer’s suspicion must be viewed as a whole when assessing the reasonableness of his acts.” Commonwealth v. Thibeau, 384 Mass. 762, 764 (1981). At the same time, a mere hunch is insufficient. Commonwealth v. Gomes, 453 Mass. 506, 511 (2009), citing Commonwealth v. Grandison, 433 Mass. 135, 139 (2001). In my view, all of the information, taken together, amounted to no more than *495 a mere hunch that evidence of drug activity would be found in the defendant’s home. To cross the mere hunch threshold, our cases, as discussed above, have attached relevance and significance to facts simply not present here. In the complete absence of specific articulable facts establishing a nexus between the defendant’s drug activity and his home, the search cannot be justified. Therefore, I respectfully dissent.

I am not persuaded that the anonymous tip was reliable inasmuch as the additional information relative to the defendant’s movements fell short in corroborating the claim that he was selling drugs in New Bedford. Although the parole officer was able to track the defendant’s movements, there was no testimony detailing the defendant’s specific location. Nor does the record contain evidence that the defendant was observed engaging in conduct consistent with drug activity.