The defendant, Quinton K. Williams, was convicted of one count of carrying a firearm without a license and one count of carrying a loaded firearm without a license.[2] On appeal, the defendant challenges only the denial of his motion to suppress, and argues that the patfrisk of his jacket was unsupported by reasonable articulable suspicion. We agree.
Standard of review. When reviewing the denial of a motion to suppress, "we accept the judge's subsidiary findings of fact absent clear error, 'but conduct an independent review of his ultimate findings and conclusions of law.' " Commonwealth v. Woods, 466 Mass. 707, 717 (2014), quoting from Commonwealth v. Scott, 440 Mass. 642, 646 (2004). "The Commonwealth bears the burden of demonstrating that the actions of the police officers in stopping and frisking the defendant were within constitutional limits." Commonwealth v. Gomes, 453 Mass. 506, 509 (2009), citing Commonwealth v. DePeiza, 449 Mass. 367, 369 (2007).
Background. We accept all the motion judge's findings, summarized as follows. In February, 2013, two police detectives on patrol in an unmarked police cruiser observed the defendant and another man walking through a high crime area where there were recent incidents of shots fired. Neither man was known to the detectives.[3] The detectives pulled over in the cruiser and identified themselves as police officers.[4] One detective requested that both men remove their hands from their pockets for officer safety. After the detective's second request, the defendant quickly removed his hands. The second detective described the defendant as appearing nervous, and as looking like a "deer in the headlights." He further observed that the defendant's right pocket looked heavy and weighted down. Both detectives were experienced officers trained in the investigation of violent crimes. One of the detectives conducted a patfrisk of the defendant for officer safety and removed a loaded firearm from the defendant's jacket pocket.
The motion judge found that the patfrisk was justified for officer safety "[o]nce this experienced officer observed the defendant's right pocket was heavy and weighted down when he removed his hands."
Discussion. "[P]olice officers may not escalate a consensual encounter into a protective frisk absent a reasonable suspicion that an individual has committed, is committing, or is about to commit a criminal offense and is armed and dangerous." Commonwealth v. Narcisse, 457 Mass. 1, 9 (2010). Both requirements are satisfied when there is "a reasonable belief that an individual has a weapon and appears inclined to use it." Id. at 9. "The facts and inferences underlying the officer's suspicion must be viewed as a whole when assessing the reasonableness of his acts." Commonwealth v. Sykes, 449 Mass. 308, 314 (2007), quoting from Commonwealth v. Thibeau, 384 Mass. 762, 764 (1981).
The parties are in agreement that the detectives' initial stop of the defendant and his companion was consensual and that he was seized when the police announced their intention to pat frisk him. The disputed question is whether the detectives had reasonable suspicion at that point.
Even considering the factual context and the detectives' training, the mere fact that one of the detectives observed something heavy in the defendant's pocket does not provide a reasonable belief that the defendant had a weapon or that he appeared inclined to use it.[5] See Commonwealth v. Jones-Pannell, 472 Mass. 429, 434-436 (2015) (officer's training, combined with defendant ignoring officer's questions, defendant's flight, and hand inside of pants did not create reasonable suspicion that defendant possessed weapon); Commonwealth v. Martin, 457 Mass. 14, 20-21 (2010) (nervousness and silence in response to officer's questions in high crime neighborhood did not create reasonable suspicion that defendant possessed firearm). See also Commonwealth v. Mock, 54 Mass. App. Ct. 276, 282-283 (2002) (reasonable suspicion to stop defendant lacking where defendant fit description of suspect in attempted breaking and entering, was carrying bulky object under his clothing, and, upon police inquiry, increased his pace away from police). Contrast DePeiza, supra at 371-372 (defendant's "straight arm" walk, together with nervous behavior and shielding of bulge in jacket pocket that appeared to hold a heavy object, at midnight in an area of recent escalation in firearm violence, furnished reasonable suspicion to conduct a patfrisk). The defendant's conduct was insufficient to raise the detectives' beliefs beyond a "mere 'hunch.' " Commonwealth v. Silva, 366 Mass. 402, 406 (1974). We therefore agree with the defendant that the detectives did not have reasonable suspicion to conduct a patfrisk and the motion to suppress should have been allowed.
Conclusion. The judgments are therefore reversed, and the verdicts are set aside.
So ordered.
Reversed.

At trial, the trial judge dismissed one count of possession of ammunition at the close of the Commonwealth's case.

One detective testified about his familiarity with the area, including that he lives nearby and knows "most of the people in that area."

The motion judge did not make a finding about when the detectives exited the vehicle, but the detectives testified that they exited the cruiser after asking if they could speak with the defendant and the other man.

The Commonwealth properly agrees that, in this factual scenario, the defendant did not need to remove his hands from his pockets at all. See Commonwealth v. Barros, 435 Mass. 171, 178 (2001).